The next case for argument is 16-1013 Cox Communications v. Sprint Communication Company. These are specific method steps that are recited that have to be performed, and these are method claims. Including a processing system, we're saying that that's part of the environment, that the processing system executes these functions. There's really not a problem with breadth. A general purpose computer that performs these functions could meet these claims, and nothing more than that is required. We don't have to have more specific structure for the processing system to say, it has to have a memory, it has to have a CPU, it has to have all these things, because it's a well-understood concept of what a processing system is. More importantly, these are method claims. The method steps are recited, so the focus is not on the processing system. They're not all method claims. There are a few claims in some of them. I guess we're talking about six patents here, and if you go through the six, there are some claims that are not method claims. Do you think we should look at those differently from the method claims? Much of the argument, some of the argument is directed to the fact that these are method claims, and I'm just wondering how that applies to the ones that aren't. The claims that are at issue are all method claims. Really? Are we talking about method claims that are actually at issue? I thought that we were talking about all six of the patents. Well, the court found that the claims that were asserted, which were all method claims. Okay, they're only method claims that were asserted? That's right. Okay. As your Honor knows, the claims can be claimed in different ways. They can cover the system, they can cover the apparatus, but we're focused here on the method claims. That's all that's before the district? That's right. Okay. And the specification shows how this system fits into the network. There are figures that show it. There are flow charts. And the district court here somehow thought it was proper to ignore all the functions recited in the claims, as well as in the specification, and disregard any evidence because it wasn't structural. This court's guidance, for example, in the Nautilus III case, tells us that describing things in terms of function can be very informative. So discarding all that description of the function was clearly improper. Well, I don't know when Williamson was decided in connection with how this case went down, but certainly the suggestion is that Williamson broadened, to at least some extent, the ability to have a means plus function. Yes, it did. So let's assume, it's a little confusing to me in the record, I agree with you, whether or not, kind of going back and forth on means plus function, but why would this not be properly construed as a means plus function? Well, there are two reasons. First of all, even after Williamson, there is a presumption, and the use of the term processing system does not presume to invoke 112F or 112F. A system that processes, right? That's right. And it doesn't use the word means, and it's not something that invokes that. Second, and probably more importantly, both parties agreed this is not a means plus function term, and that must mean that there is a recognized structure that it corresponds to. So Cox is not taking the position that this 112F applies. There's been no development of that. There's been no discussion of that. And as I said earlier, there's a general agreement that some type of computer has to be used for this processing system, and that's a well-recognized structure. There are other cases like personalized media that we've cited, a digital detector. That's a device that acts to detect digital signal information. Not really any different than what we have here. The Hill-Rom case that involved a data link, a link that carries data in a wired or wireless fashion. The court said any link over which data is transferred. That's broad, but it's not indefinite. And there's nothing wrong with defining a term by its function. The court here focuses on the physical structures. This is really the wrong test. Nautilus looks for reasonable certainty, and a processing system that can execute these steps in the method is all that's required. The court made some additional errors. Go back to the Chief Judge's earlier question that she began with. Again, the claims really seem to treat processing system not as something that has some discrete structural features. As you seem to be suggesting, you're emphasizing that we know they're computers and so forth, but it rather seems to be almost, for lack of a better term, a black box that happens to be the locus of the various steps that are performed. But it struck me that there's no real requirement that the processing system have any particular structural features the way the claims are read. The claims could have left out the term processing system, could they not? I don't think so. Okay. Maybe you can help me on that then. No. Well, for one reason, it wouldn't have been left out. We would have ended up with perhaps just a series of method claims that could be performed by a human, and that certainly would be a problem. And so it has to be performed by a processing system. We don't want to get into the whole pencil and paper. I doubt that a human could have performed all these steps. But it's very conventional for computer-implemented methods to recite implemented on a computer or, in this case, a processing system. Well, suppose then, to take a step back from my earlier question, that you substitute the word computer for the word processing system. It wouldn't make any difference in the scope of the claims, would it? No, it shouldn't, no, because that's an understood structure. I mean, what we're leaving out, of course, is the programming, the special programming of the computer. But I think what I hear you say is that that's not what is carrying the weight of the claims. That's right. The weight of the claims is carried by the various method steps, such as receiving, processing, to select a network code, generating a control message, transferring, receiving, and transferring. That's right. As opposed to the algorithm, focusing on the algorithm that's doing all this. Well, in one sense, there is an algorithm. It has to be, but these are describing the steps. And your argument, I take it, is that no more is really required. No more is required, that's right, because these steps are what make up the method that is claimed. And the processing system, it's more than a black box, because there is a lot more description in the specification, including identifying a particular piece of hardware that would work, as well as the internal structure, including the interface, the translator, processor, memory. But that's the level of specificity that's needed, because these are focused on the method claims. And the processing system, as we've said, is not the focus of the invention. Now, the two structures that are specifically called out, Tandem and Spark, was it? Right. Those are, as I understand it, not specially designated, but rather more in the nature of general purpose computers, are they not? They are. They have a particular role in telecommunications networks. They're specifically suited to that type of processing. But this is pre-loading the algorithm that performs these particular steps, I take it. Well, there will have to be some software involved. But as you say, the processing system is not the focus, it's the method steps. And this is not a means clause, so it doesn't say a processing system for doing a particular function. We're not into the compliance mechanism case, where there were specific functions recited that you needed an algorithm for. So all of that under 112F, the algorithm, that's not required here. Can I just ask you a quick process claim? Because there's a case pending in Kansas, right? That's right. And that's been stayed? That has been stayed, yes. And then were there validity challenges left? Where were you in connection with the two Judge Robinsons here, I guess, with the one in Delaware? What is the standing of this case, leaving aside this indefinite? The case is proceeding on other patents that are also involved in the case, and Judge Robinson entered a judgment under Rule 54B as to these six patents. But the case is continuing and will go to trial on the rest of the patents. And are there other validity challenges? I believe there are, but those were not resolved in view of the courts entering judgment on this one particular ground. Now there is the other related case where Judge Robinson, in a similar patent, found the exact opposite of which she did in this case. This is the one that you submitted? That's right. And based on the same evidence, the same declarations, found there was a well-understood meaning. 112F did not apply and adopted the construction that we had proposed for processing system. This is not going up forward? That case is. It's a different case. That's yet another case, right, on a different patent. All right. Thank you. Why don't we reserve the rest of your rebuttal and hear from Mr. Brody. Thank you, Your Honor. Mr. Jakes stole my introduction, and I think I can skip directly to the questions that the court posed to him because I think they framed the issue exactly. As I understand what Mr. Jakes said, it's printed position that the processing system limitation contemplates a general purpose computer, that it has no other definition, no other limitation on the claims, that if you simply, to use your question, Judge Bryson, substituted the words a computer in these claims, they would read exactly the same. But it was also Mr. Jakes' statement and acknowledgment, as indeed was acknowledged below in response to Judge Robinson's direct question, that the computer in this case has to be specially programmed because the claims call out very specific functions, and they claim that combination of functions to be inventive and to be implemented by an inventive device. The patent, for example, the 932 patent at A352 of the appendix, recites that aside from the CCP, these elements of large networks are familiar to one skilled in the art. In other words, the CCP, which again is Sprint and Cox both agree, is the example of a processing system, was the point of departure for this patent. It was the point of novelty in this system. Likewise, at page A357 of the appendix, and I cite here 932 patent specifications are common for four of them, and the other two are very similar, and that's all spelled out in the briefing. But at page A357, column 20, beginning at line 47, the present invention represents a fundamental and powerful departure from present telecommunications technologies. By separating the communications path from the communication control, the CCP, the processing system, can utilize different networks and devices, and it goes on to explain why that's a good thing. So the point is that precisely the point of these claims that calls out what is described as precisely the innovation of the invention is by counsel's admission, nothing more than general purpose computer, even though as counsel also admits, and as Sprint has repeatedly said below, and as the patent plainly discloses, that device needs to be specially programmed. Now, if the claim said a means for performing this function, it doesn't, and I understand that. If it said a means for performing this function, and if what was included in the specification was nothing more than the phrase a processing system or a general purpose computer, there would be no question about the invalidity of these claims. But I guess maybe I'm unclear on what point we're making, because the specifications provide figures showing components of the CCP and the CCM, and there are flow charts, shows the degrees of processing, and there's lots of information. Why is that not enough? That would be enough. To show a person of reasonable art, a person of ordinary skills and reasonable certainty. There are two answers to that question, Your Honor. The first is that was the argument we made below. We said either this is indefinite and invalid, or it's a 112-F limitation, and it has to be construed in light of the specification. Did you make the argument that it was 112-F? Yes. My understanding, well, I think you have a dispute then with Mr. Jakes, because he's taken the position that this was not raised by either party. That is not true. Okay. That is, the briefs below are in the appendix, and there were two arguments made. One was the phrase itself is meaningless, and the second was you might be able to save it under 112-F by looking to the specification, and we argued that, and we argued that the specification disclosure was insufficient, and that's another long story. But Sprint's position below was we're not taking that route. We're abandoning our 112-F safe harbor. They said we're going to stand on the plain meaning of that phrase, and the problem is that they can't get a broader scope of claim by putting processing system in the claim itself than they would by putting it in the specification. The second problem with that issue, Your Honor, is that Sprint's is implicit in the first thing I said, namely the reason why the specification might matter and might define the scope of the term is if you construed the term to be limited to what is in the specification. In other words, if processing system were construed to be the CCP, which is what's in the specification, that would be a completely different case. I think it would still be inadequate here. There's a long discussion below about why the specification simply describes more and more functionality but never gets to the algorithm that you need, but that would not solve the problem. What they want to do is have their cake and eat it too. They want to say processing system means any computer, but you know what that means because we've got all of this description in the specification but don't limit the claims in that way. They can't have it both ways. Either processing system means something in particular, which is the CCP, and then you have to evaluate it under all the 112F standards and you have to ask all those questions. Then you've got a very different system because the whole point was to come up with an innovative processing device that would let them achieve the things that they wanted to. Or, I forgot where I started out, but they can't both have the breadth of a general purpose computer supported by the specifications and refuse to accept the limitations that the specifications encompass. The whole point of 112F. Leaving aside the whole indefiniteness inquiry, if we're just dealing with the claim construction question, so processing system is not going to be defined in the abstract, in normal Markman proceedings. It's going to be defined by how it's addressed and explained in the specification. So I don't understand what your worry is that they're going to get to claim everything in the universe outside of the specification when that's how, I'm consumed with the indefiniteness stuff, but if you just do a pure claim construction, the claim's going to be construed in light of the specification and so it's going to be confined to what's consistent. Right, but that's exactly what they're saying they don't want you to do. They want you to, they ask you, first of all, that's the second. Well, I don't know, we're not at claim, I mean she said she couldn't construe it. No, no, she said because this is what happened, she said they asked her not to construe it. She said, I could look at this under 112F. Well, you know Judge Robinson, I know Judge Robinson, just because they told her to do something, or they asked her to do something, didn't confine her on the lease. Absolutely. So if he's persuaded by our court hypothetically that this isn't an indefiniteness problem and you have to go on to construe the claims, I don't understand. So she's, because they say something, she's going to construe the claims to cover any computer no matter what and not look at the spec to see how that's constrained? Again, there are two things. First, they do have a waiver problem on that point because they, we posed that issue to them. We said explain, we think the claim. I can't deal with, I mean the waiver issue hasn't been presented to us. If there's a waiver argument there, Judge Robinson will be competent to deal with that. So I don't know how we can deal with the waiver argument. Well, with due respect, I think you can because it's in Judge Robinson's opinion that the 112R argument was waived. She made that holding. And second, it wasn't preserved on appeal because their briefs, at least a dozen times, say that they are not relying on 112F. I'm not talking about 112F. I'm talking about normal claim construction. So then we come to normal claim construction. And again, I think there are two issues. The first is that nobody has advocated that position. There is no record below to suggest that position. The judge didn't consider that position. It simply has never been on the table. Make three issues. The second point is that at this point their position about what the specification says and what the claim means, what its common meaning is, is that it's a general purpose computer. And, in fact, we agree with them because that's what the specifications disclose. They disclose the tandem computer and the spark computers, with due respect to Mr. Jakes, are not telecommunications computers. They're simply workstations. And you have to program them specially in order to make them able to function for this purpose. You know, I think Your Honor can certainly remand and ask Judge Robinson to consider the limitation in that light. But I think then the question becomes, Sprint's going to have to go before her and say, in essence, you know all that stuff we told you about how the phrase has this breadth? All that was hooey because now we're going to take a completely different position. That's just not what they argued. Below, we made specifically the point that even when you do that analysis, you still don't get to a structure. But the patent is, this was an early patent in a sequence of patents. It was the first. And what happened was Sprint had what they thought was a great idea about how they could organize networks. And they wrote this patent to capture that idea. There are a sequence of patents that they issued as that idea got worked out. And some of the other patents in this case are, in fact, much more definite about what the processing system was and how it actually operates and what the algorithms are. And those patents actually do disclose structure and actually claim structure. The argument you're asking Judge Robinson to consider is exactly the argument that was posed to her in which she, that is to say the question of whether the specification actually has any content for the structure, in which Sprint said, we're not taking that position below, in which they have said repeatedly here they're not taking that position, in which she, for that reason, did not reach. So it's not an issue that's preserved for appeal, due respect. At the end of the day, our position, I think, is pretty simple, especially in light of the positions that Mr. Jakes took. Everybody seems to agree that what processing system means is nothing more than a general purpose computer. Everybody seems to agree that the patent describes a very specific type of telecommunications network and a very specific device at the center of that network. The claim cannot be unlimited under those circumstances, and that's exactly what they're proposing. If the processing system simply means a computer, the same question that I was discussing with Mr. Jakes, then why, if you substitute computer for processing system everywhere in, let's say, the Claim 1 of the 3561 patent, where's the indefiniteness? Well, the indefiniteness... There's no, no, I mean, we know what a computer is, and the other elements of that claim are all just method steps. I mean, I can see you might make an argument for lack of enablement, but where's the indefiniteness? Well, let me post you a slight counterfactual, or counter-hypothetical, if I could, and then come back to your... Okay, but make sure you come back to my question. I will. Okay. So the counter-hypothetical would be, suppose the claim set a means for doing each of these things. Everybody knows what that dictates. You go to the specification, and suppose if you go to the specification, all it says is, use a computer to do it. And you don't have structure. We all know that that's... You don't have any structure. So then the question is, does a claim which has the same limitation as that counter-hypothetical I posed explicit in the claim language, is it better than it would be if it had used the means phrase? Right? So if you move the computer phrase up into the claim, why does that make it more definite than it would otherwise? Well, if all the water that's being carried by this claim, as I read it, seems to suggest that the water is being carried by the steps and not by the processing system itself or the computer, that's just the locus at which the steps are being performed. It seems to me you could have left the words processing system out of... and you would have had a perfectly definite claim. You might have had other problems, other validity problems, but I don't think you'd have indefiniteness, would you? To get back to my first question, either stick computer in there or leave the processing system out altogether. And so it reads, receiving a signaling message, selecting the network code, generating the control system, transferring the control message, receiving the user communication, and transferring the user communication. There's no indefiniteness there, is there? Actually, I think there probably would be. What would that be? What would the nature of that indefiniteness be? Well, for example, it's some of the issues that Mr. Jake's raised. What would receiving mean if it's met with respect to a particular type of device? I mean, how would you understand each of those functional limitations? What I think can be said here is, again, a couple of things. First, the passages I shared with the court actually put the weight of the invention in the device itself. That's what the specification is about. That's what it says is the invention, the fundamental and powerful departure, in the words of the patent, is the CCP. Second, the invention isn't simply doing a sequence of steps. The invention is, actually as described in the specification, the invention is figuring out a way to those steps were always performed, but they were performed in the devices that actually made up part of the, they call the path for the telecommunication. The patents are about separating that functionality from the path, so it's got a sort of a separate flow. This is all summarized in the briefs. The reason why that makes a difference is because in order to separate that functionality, you have to have a new device outside of the control path to perform the functions that are claimed. The fact of the matter is, you could certainly have a patent on that device. In fact, Sprint thought it was innovative, and they asked for one. They could have limited it to the CCP, but they didn't. They could have claimed it as simply a method claim. We don't know about that, to be honest. I haven't really thought it through. Instead, what they want to do is use a limitation that they admit has essentially no constraints, where they admit there is no disclosure or claiming, at least, of structure that captures that point of innovation, and which, therefore, does exactly what the cases cited, again, by Sprint in their briefing say is impermissible, making the very point of novelty a functionally claimed device. If module is a nonce word, and if device is a nonce word, and if general-purpose computer has disclosed some specification is insufficient structure to limit a claim, then how can using the same phrase in the claim itself fare any better? That's why we think that this claim is unlimited and indefinite, and why we would ask you to affirm the opinion below. Thank you. Thank you. We'll give you four minutes, Mr. Jakes. Thank you. There's no doubt for this invention to work. There has to be a specially programmed computer. But these claims are not directed to a specially programmed computer. They are method claims. They do claim a processing system as the environment in which this method operates, but the claims are not directed to a specially programmed computer. Council says you could rewrite these claims as a means clause, processing system as a means. Means for doing what? The rest of the method steps? Then all you're doing is simply converting method claims into means claims and applying 112F, and we already know by this court's precedent that we don't apply 112F to method claims unless they are recited as a particular step four. And that would just change everything with respect to method claims. As to whether or not 112F was raised below, the district court on 820 in the footnote said, the parties agree that the means plus function format of 112F and corresponding arguments do not apply to this case. That's what the court said. I don't believe that Cox has raised a 112F argument. They rely on 112F cases by analogy, and they keep saying that you have to look to these cases. But if we were going to do the 112F analysis, we'd have to look at processing system and say, okay, what's the function that it's performing in the claim? Is it all the method steps? Well, that doesn't make any sense. But then we would have to look at what the corresponding structure is, whether there's an algorithm. There's an algorithm. There's lots of disclosure in this patent, but we've never done that because it's not necessary. We did propose a construction for a processing system as well, and that's also on 820 in the court's opinion. Sprint's proposed construction is a system that processes signaling to a system called control. That's what we propose, and that's, we think, sufficiently definite that that's all that you need for here. And ultimately, if 112F applies, which we strongly don't think it does, that's not an argument for indefiniteness. These arguments really don't go to that. We would have to look at what the corresponding structure is and do claim construction. They said it was not 112F. We haven't done that, and we don't need to do that now. Well, it would ultimately be indefiniteness if the court were to both apply 112F and then say that there is a computer, but there's no indication of sufficient algorithm to constitute structure, I guess. That's the answer, but we haven't even gotten to that point yet. There's lots of disclosure in the patent that would undermine that. What do you think should be done with the trial court's finding based on evidence? This is at page 10 of her opinion, addendum 19, that there is no established meaning in the art for the disputed limitation. That's a tough one to deal with because, first of all, Judge Robinson found the opposite in her later opinion. All the very same evidence. All that means is she was right at least once, so she may have been right here. What do you say to that? Her finding on that in this case shouldn't be given deference. We've described why it's wrong. We rely on our experts' declaration, but it's tainted by the court's other errors. The court assumed that definiteness required some type of explicit structural finding that she disregarded all the functional evidence. Starting with that, that infected it. The court evaluated this processing system in a vacuum, not looking at the particular claim. She relied on a computing dictionary instead of a telecommunications dictionary. The court looked at these references and said they were extrinsic evidence, they're really intrinsic evidence. All those errors infect that finding. Given that this could be a computer which has an understood meaning, the court's finding that there is no understood meaning is wrong. Thank you. Just one question. Was it resolved in a district court? Their concern obviously is that when you get to infringement, that if you have a sufficiently broad claim construction that ends it. Was it resolved with Judge Robinson that the debate about whether it should be limited to the call manager or the other issues that they apparently believe would avoid infringement, are those questions still open in your view? I don't believe so. I believe that we've offered the construction that would be an alternative construction, but there's no need to construe the claims in that narrow fashion. Cox has agreed that 112F doesn't apply and never put forward that they would be limited to what's in the specification. Thank you. The court is in the case as submitted.